**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| THE BRAUN CORPORATION,       )<br>      Plaintiff,       )<br>                                               )<br>v.                                            )<br>                                               )<br>VANTAGE MOBILITY        )<br>INTERNATIONAL, LLC,       )<br>      Defendant.       ) | CAUSE NO.: 2:06-CV-50-JVB-PRC |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Amend Answer [DE 151], filed by Defendant, under seal, on November 23, 2009. Plaintiff filed its memorandum in opposition on December 21, 2009, and an amended version on January 11, 2010. Defendant filed its reply brief in support of its Motion to Amend Answer on January 7, 2010.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 10, 2006, and June 15, 2006, Plaintiff filed its Complaint for Patent Infringement and Amended Complaint for Patent Infringement, alleging that Defendant[1] infringed its U.S. Patent No. 6,825,628 ("the '628 patent"), entitled "Electronic Controller for Vehicular Wheelchair Access," by selling and/or offering for sale an electronic control system for controlling vehicular wheelchair access ("the VMI System"), which Plaintiff alleges is covered by at least one claim of the '628 patent. The '628 patent was issued to Braun as assignee of the patent on November 30, 2004.

---

[1] American Honda Motor Co., Inc., was also named as a Defendant in the Amended Complaint but has since been dismissed.

On August 9, 2006, Defendant filed its Answer and Counterclaim and pled the defense of inequitable conduct. Pursuant to a stipulation of the parties, the Court dismissed the inequitable conduct defense without prejudice on May 9, 2007. On May 10, 2007, Defendant filed its Amended Answer and Counterclaim, again pleading the affirmative defense of inequitable conduct. Plaintiff later sought to dismiss or strike the affirmative defense of inequitable conduct and on March 27, 2009, the Court dismissed, without prejudice, the Defendant's affirmative defense for failure to plead with sufficient particularity under Federal Rule of Civil Procedure 9(b).

On May 27, 2009, Defendant served a Supplemental Answer to Plaintiff's Interrogatory No. 9, "in the form in which [Defendant] expect[s] to reallege inequitable conduct," and a cover letter indicating that Defendant intended to reallege this defense after additional discovery, specifically the deposition of Paul Edwards. Pl.'s Resp. Br., Ex. 8. The fact discovery deadline expired on September 18, 2009, and the parties exchanged their initial expert reports on infringement, damages, and invalidity on November 6, 2009.

On November 23, 2009, Defendant filed its Motion to Amend Answer, seeking to amend its Answer by adding the affirmative defense of inequitable conduct related to the '628 patent. In particular, the inequitable conduct defense alleges that the inventors, Donald S. Sturm, Ronald W. Goodrich, and Keith D. Heigl, and Plaintiff's representative, Jeffrey Hermanson, were each aware of three material prior art references before the '628 patent was issued and failed to disclose the highly material prior art during the prosecution of the patent, and also made misrepresentations during prosecution of the '628 patent.

Plaintiff filed a response brief in opposition on December 21, 2009, and an amended response brief on January 11, 2010, to which Defendant filed a reply brief on January 7, 2010.

**ANALYSIS**

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with . . . the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further provides that the court "should freely give leave when justice so requires." *Id.* Thus, if the underlying facts or circumstances relied upon by a party are a potentially proper subject of relief, the party should be afforded an opportunity to test the claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision whether to grant or deny a motion to amend lies within the sound discretion of the district court. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990). However, leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman*, 371 U.S. at 183).

In its response brief in opposition to the instant Motion, Plaintiff argues that the instant Motion should be denied because of undue delay in bringing the proposed amendments, which will result in undue prejudice to the Plaintiff, and because the proposed amendment is futile. The Court addresses each objection in turn.

*1. Undue Delay*

Plaintiff argues in its response brief that Defendant unjustifiably waited until after the discovery deadline to file the instant Motion, despite the fact that it possessed the evidence that allegedly supports the inequitable conduct defense before the discovery deadline expired, and, thus, the Court can infer bad faith or a dilatory motive from Defendant's failure to bring the instant Motion before the discovery deadline.

Defendant contends that its delay in bringing the instant Motion until after the discovery deadline was a result of Plaintiff's failure to produce a critical document–the IMS manual–until after the discovery deadline expired. Further, Defendant contends that it was unable to conduct the deposition of Mr. Edwards until late in the discovery process because of his reluctance to cooperate out of fear of retaliation by Plaintiff. Additionally, Defendant contends that any delay in bringing the instant Motion was reasonable because of the heightened pleading standard that Defendant had to meet for its inequitable conduct defense and it could not meet this burden until it obtained the depositions of Mr. Edwards and William Giroux (both of which occurred late in discovery) and obtained the IMS documents from Plaintiff.

The Court finds that Defendant did not unduly delay in bringing the instant Motion. As with fraud, claims of inequitable conduct must be pled with particularity. Fed. R. Civ. P. 9(b); *See Exergen Corp. v. Walmart Stores, Inc.*, 575 F.3d 1312, 1325-28 (Fed. Cir. 2009) (discussing that inequitable conduct must be pled with particularity under Rule 9(b)); *Douglas Press, Inc. v. Tabco Inc.*, No. 00 C 7338, 2004 WL 1144054, at *1 (N.D. Ill. May 17, 2004) (noting the same). Here, while Defendant does not allege that it did not previously have evidence in its possession that it relies on to support the inequitable conduct defense, the Court notes that relying on this evidence, Defendant was previously unsuccessful in alleging the inequitable conduct defense with the particularity required under Rule 9(b). Further, due to the Federal Circuit's holding in *Exergen* (as discussed in more detail below), Defendant faced an even more stringent pleading standard. Defendant contends that it could not satisfy the more stringent pleading standard until it obtained the depositions of Mr. Edwards and Mr. Giroux, as well as the IMS documents that Plaintiff did not disclose until after the discovery deadline. Under these circumstances, and given that "[a]llegations of inequitable conduct are serious", the Court

4

"cannot fault [Defendant] for waiting for further evidence before filing such an affirmative defense, especially keeping in mind Rule 11 of the Federal Rules of Civil Procedure." *Tabco Inc.*, 2004 WL 1144054, at *1. Accordingly, the Court finds no bad faith or dilatory motive in Defendant's failure to bring the instant Motion until after the discovery deadline expired. Therefore, the Court finds that the delay here was not undue.

Further, even if the Court were to find that the delay was undue, as discussed below, Plaintiff has failed to show that it will suffer undue prejudice.[2]

*2. Undue Prejudice*

Plaintiff argues that if the instant Motion is granted, it will be prejudiced because it conducted discovery depositions of Mr. Edwards and Mr. Giroux based on the pleadings that did not contain the inequitable conduct defense and it is unlikely that the witnesses could be reexamined, Plaintiff had to submit its rebuttal expert report before knowing whether the inequitable conduct defense is at issue, and the discovery deadline has expired, preventing Plaintiff from testing the defense during the discovery period. Further, Plaintiff argues that permitting the proposed amendment "creates exactly the kind of surprise that the Federal Rules of Civil Procedure are designed to prevent." Pl.'s Resp. Br. at 10.

First, to the extent that Plaintiff argues that the proposed amendment will result in surprise, the Court finds that Plaintiff was on notice that Defendant would attempt to plead the inequitable conduct defense again. As the record supports, Defendant on two previous occasions attempted to assert the inequitable conduct defense and on May 27, 2009, while discovery was still ongoing, Defendant

---

[2] To the extent that Plaintiff argues that the proposed amendment will dramatically expand the allegations to which it must respond, as discussed in more detail below, the evidence allegedly supporting the inequitable conduct defense is also relied on in support of the invalidity defense, which has already been subject to discovery.

provided Plaintiff with its Supplemental Answer to Plaintiff's Interrogatory No. 9 and specifically indicated that it intended to reallege the inequitable conduct defense after additional discovery. Accordingly, the record supports that Plaintiff was aware that the amendment would be brought and Plaintiff cannot now claim surprise.

Further, to the extent that Plaintiff alleges it will be prejudiced because it is unlikely that it could reexamine Mr. Edwards and Mr. Giroux, these two depositions were taken during September 2009. At that time, Plaintiff was aware that Defendant intended to bring the inequitable conduct defense and the related invalidity defense was already at issue. To the extent that the parties may need to reexamine these two witnesses, they may move to reopen discovery for a limited period of time.

Next, to the extent that Plaintiff alleges it has been prejudiced by having to submit a rebuttal expert report before knowing if the instant Motion would be granted, the Court notes that Plaintiff has failed to demonstrate how this has resulted in prejudice, especially when the issue of invalidity was subject to discovery. Defendant bases its inequitable conduct defense on Plaintiff's alleged failure to disclose material prior art during its prosecution of the '628 patent. This inequitable conduct defense is closely related to Defendant's previously pled defense of invalidity. In its Amended Answer and Counterclaim, filed on May 10, 2007, Defendant alleges that the '628 patent is invalid because it is anticipated by and obvious in view of prior art. *See* Def.'s Am. Answer to Pl.'s Compl. and Counterclaim, Aff. Def. ¶ 3 [DE 69]. The amendment only adds the detailed proposition that Plaintiff knew of the prior art and failed to disclose it and/or made misrepresentations. Therefore, "[b]ecause the invalidity and inequitable conduct defenses are closely related, [Plaintiff] will not be unduly prejudiced by the amendment." *Tabco Inc.*, 2004 WL 1144054, at *2; *See Bower v. Jones*, 978 F.2d

1004, 1010 (7th Cir. 1992) (finding that no undue prejudice existed where a claim was similar to those in the original complaint).

Finally, "[t]he denial of a motion to amend pleadings is proper if the discovery and dispositive deadlines have passed and the motion is filed near the trial date." *Rodriguez v. Trump Casino*, No. 2:02 cv 254, 2008 WL 3271243, at *1 (N.D. Ind. Aug. 7, 2008). Although the discovery and dispositive motion deadlines have passed, this matter has yet to be set for trial. Further, as already discussed, Plaintiff has been on notice of Defendant's intent to reallege the inequitable conduct defense, specifically, months before the discovery deadline. Accordingly, the Court finds that Plaintiff has failed to demonstrate that it will suffer undue prejudice if the instant Motion is granted. *See Morton Grove Pharmaceuticals, Inc. v. Par Pharmaceutical Companies, Inc.*, No. 04 C 7007, 2005 WL 1766369, at *5 (N.D. Ill. July 22, 2005) (finding that no undue prejudice existed where the party opposing the proposed amendment knew that the request to amend was coming and the parties engaged in discovery concerning the new allegations).[3]

### 3. Futility of Amendment

Plaintiff also argues that the amendment would be futile as Defendant has failed to plead the inequitable conduct defense with the particularity required under Rule 9(b) and *Exergen*. An

---

[3] Further, to the extent that Plaintiff alleges that Defendant is now tendering an "on-sale" defense in its proposed amendment and that Defendant did not previously assert this defense, the Court finds that the proposed amendment will not result in undue prejudice to the Plaintiff. Although it appears from the proposed Amended Answer and Counterclaim that Defendant is attempting the raise the on sale bar, 35 U.S.C. § 102(b), through its reference in the allegations supporting its inequitable conduct defense, *see* Def.'s Second Am. Answer to Pl.'s Compl. and Counterclaim, Aff. Def. ¶ 4(a)(16), contrary to Plaintiff's argument, Defendant has already put the on sale bar at issue. In its previous Amended Answer and Counterclaim, Defendant alleged in its claim for declaratory relief that "claims 1-23 of the '628 patent are invalid because the invention claimed therein was in public use or on sale in this country more than 1 year prior to the date of the application for the patent." Def.'s Am. Answer to Pl.'s Compl. and Counterclaim, Counterclaim ¶ 12 [DE 69]. Accordingly, Plaintiff cannot claim that Defendant is raising the on sale bar for the first time in the proposed Amended Answer and Counterclaim.

7

amendment is considered "futile" if it would not withstand a motion to dismiss or motion for summary judgment. *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007); *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001). Nevertheless, unless it is clear from the face of the pleading that the amendment would be futile, such that "it appears to a certainty that [Defendant] cannot state a claim," the district court should grant leave to amend. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)(citing *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 230 (7th Cir. 1995); *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978); *Austin v. House of Vision, Inc.*, 385 F.2d 171, 172 (7th Cir. 1967) (per curiam); *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991); *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Seventh Circuit Court of Appeals has held that the "circumstances" in Rule 9(b) "must be pleaded in detail"-"[t]his means the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Recently, in *Exergen*, the Federal Circuit adopted the Seventh Circuit's reasoning and held that inequitable conduct must also be pled with particularity. *Exergen*, 575 F.3d at 1325-28. In pleading inequitable conduct in patent cases, "Rule 9(b) requires identification of the specific, who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. Furthermore, an inequitable conduct pleading must also "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld

material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

Nevertheless, "[t]he heightened pleading requirements of Rule 9(b) do not require that [the defendant] definitively prove the merits of its claim. What is determinative here is that [the plaintiff] was given fair notice of the basis for [the defendant's] inequitable conduct defense." *Lincoln Nat. Life v. Transamerica Financial Life Ins. Co.*, Cause No. 1:08-CV-135, 2009 WL 4547131, at *2 (N.D. Ind. Nov. 25, 2009) (quoting *WesternGeco v. Ion Geophysical Corp*., No. 09-cv-1827, 2009 WL 3497123, at *7 (S.D. Tex. Oct.28, 2009)).

After reviewing the proposed amendment, the Court concludes that Defendant's proposed inequitable conduct allegation meets the heightened pleading standard required by Rule 9(b) and *Exergen* as the pleading sufficiently details the "who, what, when, where, and how" of the alleged inequitable conduct.

First, the Defendant has sufficiently pled "who" allegedly committed the inequitable conduct. For each of the three prior art references (the IMS prior art, Ricon prior art, and VMI prior art), the proposed Amended Answer and Counterclaim alleges that Sturm, Goodrich, Heigl, and Hermanson were aware of the material prior art and deliberately withheld this information during the prosecution of the '628 patent. The proposed amendment at issue in *Exergen* solely named "Exergen, its agents and/or attorneys" as withholding the allegedly material references. *Exergen*, 575 F.3d at 1329. As a result, the Federal Circuit found that the pleading failed to comply with the "who" requirement. *Id*. Here, however, Defendant's amendment specifically names the individuals who allegedly withheld information regarding the material prior art from the Patent and Trademark Office ("PTO"). Accordingly, Defendant has satisfied the "who" requirement.

9

Next, the pleading adequately states "what" claims and/or limitations in the '628 patent are relevant to the withheld references. For example, Defendant alleges that the three prior art references are related to claims 1, 8, 10, 21, and 22 of the '628 patent. The pleading at issue in *Exergen* did not specifically identify which claim the withheld references were relevant to, and was found to be insufficient. *Id.* at 1329. By specifically alleging that the withheld prior art references are related to claims 1, 8, 10, 21, and 22 of the '628 patent, the Defendant's pleading meets the "what" requirement.

Defendants have also sufficiently alleged "when" the alleged inequitable conduct occurred. The proposed Amended Answer and Counterclaim alleges that Plaintiff became aware of the IMS prior art as early as January 1999, when Sturm reverse-engineered the IMS System and then discussed his findings with Goodrich and Hermanson. Defendant further alleges that Plaintiff became aware of the Ricon prior art on November 19th or 20th, although not specifying if in 2001 or 2002, when Heigl and Goodrich dissected a 2001 Chevy Venture Activan conversion with OEM Power Door. Further, Defendant alleges that the Plaintiff became aware of the VMI prior art in January 2002 as Goodrich and Heigl reverse-engineered a VMI Chrysler minivan conversion with OEM door and VMI-4 controller. Yet these individuals allegedly failed to disclose any of this material information during the prosecution of the '628 patent. Accordingly, the Defendant's pleading sufficiently alleges when Plaintiff became aware of the prior art references.

Further, Defendant has sufficiently shown "where" in the references the material information is located. For example, Defendant alleges in the proposed Amended Answer and Counterclaim that the material information regarding the IMS prior art reference was obtained by Sturm's reverse engineering of the IMS system in January 1999, the findings of which he then discussed with Goodrich and Hermanson. Further, Sturm allegedly prepared a final report and meeting minutes indicating that

he, Goodrich, and Hermanson understood the highly material nature of the IMS system. Defendant also alleges that the material information regarding the Ricon prior art was obtained by Heigl and Goodrich's dissection of a 2001 Chevy Venture Activan, Plaintiff's internal documents related to the dissection, and a final set of documents allegedly distributed to Heigl, Goodrich, and Hermanson, contained information regarding the dissection. Further, Defendant alleges that material information regarding the VMI prior art was obtained through dissection and reverse-engineering of a 2002 Dodge Caravan Sport, Plaintiff's internal documents disclosed information about this vehicle, and Plaintiff failed to disclose any of this material information to the PTO. Accordingly, Defendant has satisfied the "where" requirement.

Defendant's pleading also meets the "how" requirement as, for each reference, Defendant alleges how the Examiner would have used the information in assessing the patentability of the claims. According to Defendant, the Examiner would have found that the IMS prior art leaves claims 1, 8, 10, 21, and 22 anticipated and/or unpatentable as each limitation in those claims is met by the withheld prior art, or is met in combination with the standard prior art technology at that time. Specifically, Defendant alleges that claim 21 claims a wheelchair access system comprised of a ramp motor operable to move the ramp, a controller operatively coupled to the ramp motor, and a door control system operatively coupled to the controller. Defendant alleges that the IMS prior art had each of these elements. Further, Defendant alleges that the IMS prior art also has each of the features in claim 21 regarding the door control system that is operable to monitor and control operation of the door and that the controller is operable to selectively delay execution of the door operation commands by the door control system while operating the ramp motor to move the ramp. Also, the IMS prior art

11

allegedly had the same feature as claim 22's requirement that the controller of claim 21 be operable to detect ramp obstructions by monitoring electrical current drawn by the ramp motor.

As to the Ricon prior art, Defendant alleges that it possesses all of the elements of claims 1, 8, 10, 21, and 22 of the '628 patent and, if disclosed to the PTO, the Examiner would have found claims 1, 8, 10, 21, and 22 anticipated and/or unpatentable. Specifically, Defendant alleges that the Ricon prior art contained the same elements as the wheelchair access system in claim 21 as well as the feature that the door control system monitor and control operation of the door.

As to the VMI prior art, Defendant alleges that it contains all of the elements of claims 1, 8, 10, and 21 of the '628 patent and, if disclosed to the PTO, the Examiner would have found at least claims 1, 8, 10, 21, and 22 anticipated and/or unpatentable as each and every limitation of these claims is met by the withheld prior art, or is met in combination with standard prior art technology at that time. Specifically, Defendant alleges that the VMI prior art contained the same elements as the wheelchair access system in claim 21 as well as the feature that the door control system monitor and control operation of the door. Accordingly, Defendant's pleading meets the "how" requirement under *Exergen*.

Further, the withheld prior art does not appear to be cumulative of the prior art of record in the '628 patent as none of the prior art of record disclosed a controller operatively coupled to a ramp motor and a door control system to monitor and control operation of the door to selectively delay execution of the door operation commands by the door control system while operating the ramp motor, as required by claims 1 and 21, while the allegedly withheld prior art possess such a controller coupled to a ramp motor and door control system. Further, the prior art of record does not appear to teach of

a controller operable to detect ramp obstructions by monitoring electrical current drawn by the ramp motor as set forth in claim 22, whereas the IMS Rampvan is alleged to have this feature.

Finally, Defendant has alleged sufficient facts that would give rise to an inference of scienter. As discussed, Defendant has claimed that during the prosecution of the '628 patent, specific individuals knew of the withheld references, these references were highly material, and, yet, were not disclosed to the Examiner. Further, Defendant alleges that Plaintiff made affirmative misstatements to the PTO (for example, Defendant alleges that the one touch feature was found in the IMS Rampvan technology, but the '628 patent falsely states that Sturm and Goodrich devised the first "one-touch" feature) and its subsequent conduct included broadening its claims to include additional unpatentable material when the Examiner did not locate the invalidating prior art.[4] These allegations are sufficient to create a reasonable inference that the references were withheld deliberately in order to deceive the PTO. *See Lincoln Nat. Life*, 2009 WL 4547131, at *4 (finding that sufficient facts were alleged to create a reasonable inference of scienter where the defendant alleged specific individuals who knew of withheld references, and the references were highly material, but undisclosed, even despite filing subsequent documents with the PTO); *Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc.*, No. 2:08-cv-136, 2009 WL 3172740, at *3 (D. Vt. Oct. 1, 2009) (finding sufficient pleading where the defendant specifically alleged the individuals involved, information that was withheld, and why that information was material).

Nonetheless, Plaintiff raises a number of arguments in support of its contention that the Defendant's proposed amendment fails to comply with the heightened pleading standard under

---

[4] Particularly, Defendant alleges that Plaintiff purchased IMS prior to being issued the '628 patent, but did not disclose this information. Further, Plaintiff allegedly failed to disclose the withheld prior art when it submitted a Continuation-in-Part application of the '628 patent on May 16, 2006.

13

*Exergen* and Rule 9(b). First, Plaintiff alleges that Defendant fails to specifically tie the inventors or other individuals associated with the Plaintiff to the information or allege that these individuals had specific knowledge of the information or its significance. However, reviewing the proposed Amended Answer and Counterclaim, the Court concludes that Defendant's proposed amendment does allege that individuals had specific knowledge of information. For example, Defendant alleges in the proposed Amended Answer and Counterclaim that the material information regarding the IMS prior art reference was obtained by Sturm's reverse-engineering of the IMS system in January 1999, and that Sturm allegedly prepared a final report and meeting minutes indicating that he, Goodrich, and Hermanson understood the highly material nature of the IMS system.

Next, Plaintiff argues that the proposed amendment fails to plead facts which lead to the inference that the systems that Defendant relies on are in fact prior art. Specifically, Plaintiff argues that Defendant's allegation that the Ricon prior art was dissected on November 19th and 20th, without alleging whether it occurred in 2001 or 2002, would have been too late because the application that ultimately led to the '628 patent was filed earlier. Nonetheless, whether the dissection took place in 2001 or 2002, Plaintiff still had a duty to disclose as "[t]he duty to disclose prior art under Rule 56 [of the PTO] extends from filing until the issuance of the patent," and the patent was not issued until November 30, 2004–well after the alleged dissection. *Ring Plus, Inc. v. Cingular Wireless LLC*, 637 F. Supp. 2d 423, 435 (E.D. Tex. 2009). Further, Plaintiff argues that with regard to the alleged dissection of the VMI system, there is no allegation in the proposed amendment that any of Plaintiff's inventors knew that the VMI system constituted prior art. However, in the proposed Amended Answer and Counterclaim, Defendant specifically alleges that "Goodrich, Heigl, and Hermanson possessed knowledge of this highly relevant prior art during prosecution of the '628 patent yet failed to disclose

it to the Examiner." Def.'s Second Am. Answer to Pl.'s Compl. and Counterclaim, Aff. Def. ¶ 4(a)(10).

Next, Plaintiff argues that Defendant fails to allege any facts that, if proven, would establish that the inventors intended to deceive the PTO, and that intent can be inferred from circumstantial evidence only when the inference of intent is the only reasonable explanation of the circumstances. Contrary to Plaintiff's argument, as discussed above, the Court finds that Defendant has sufficiently alleged facts giving rise to an inference of scienter. Further, to the extent that Plaintiff argues that intent can only be inferred from circumstantial evidence when the inference of intent is the only reasonable explanation of the circumstances, the Court notes that Plaintiff is relying on the incorrect legal standard. As the Federal Circuit noted in *Exergen*, "[i]n contrast to the pleading stage, *to prevail on the merits*, the accused infringer *must prove* both materiality and intent by clear and convincing evidence." *Exergen*, 575 F.3d at 1329 n. 5 (emphasis added). "Whereas an inference of deceptive intent must be *reasonable and drawn from a pleading's allegations of the underlying fact to satisfy Rule 9(b)*, this inference must be 'the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.'" *Id.* (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)) (emphasis added and emphasis in original omitted). Accordingly, Plaintiff is relying on the standard necessary to prevail on the merits, rather than to satisfy Rule 9(b)'s heightened pleading standard, which is applicable here.[5] As discussed

---

[5] Further, to the extent that Plaintiff contends that the alleged facts in the proposed amendment do not lead to only one inference, Plaintiff argues that Defendant has failed to allege in detail what information the inventor knew and how the inventor came to know it, and that mere inspection of a system does not mean that the engineer understood all of the details of it. However, the Court has already determined that Defendant has indeed sufficiently alleged what information the inventors knew and how they came to know it. Further, Defendant has alleged that after Sturm reverse-engineered the IMS system in January 1999, he prepared a final report and meeting minutes indicating that he, Goodrich, and Hermanson understood the highly material nature of the IMS system.

15

above in this Opinion and Order, the Court finds that Defendant's proposed amendment satisfies the requirements of Rule 9(b) and *Exergen*.

Plaintiff further argues that Defendant fails to provide specific allegations as to how Plaintiff's inventors knew of the intricate details of the alleged prior art systems, and fails to allege with specificity that the inventors knew "all of the details" rendering the representations false. Pl.'s Resp. Br. at 14. However, the proposed amendment specifically alleges how the inventors knew of the details of the alleged prior art systems (for example, by dissecting the IMS prior art in January 1999). Further, although Plaintiff is correct that Defendant has not alleged that the inventors knew "all of the details" rendering the representations false, *Exergen* requires allegations that the individuals alleged to have made the misrepresentations knew of the specific information alleged to be material and then decided to deliberately withhold it. Here, Defendant alleges that Sturm, Goodrich, and Hermanson were aware of specific material information regarding a "one-touch" controller that the IMS prior art allegedly contained, by dissecting the IMS Chrysler Genesis, and failed to disclose this information to the PTO. Further, Defendant alleges that Sturm prepared a final report indicating that he, Goodrich, and Hermanson understood the material nature of the IMS system. Therefore, Defendant has adequately alleged that Plaintiff's inventors knew of the specific information alleged to be material and rendering their representations false.

Accordingly, the Court finds that Defendant has sufficiently pled the affirmative defense of inequitable conduct and the Court cannot say at this point that Defendant's Amended Answer and Counterclaim would be futile. "The heightened pleading requirements of Rule 9(b) do not require that [Defendant] definitively prove the merits of its claim." *WesternGeco*, 2009 WL 3497123, at *7. Rather, what is required by the Federal Rules of Civil Procedure is that Defendant give fair notice to

Plaintiff of the basis for its inequitable conduct defense. *Id.* The Court finds that Defendant has adequately done so here.

Given the liberal standard that applies when deciding whether to grant a motion to amend an answer, the Court finds, in the interest of justice, that the instant Motion should be granted.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Defendant's Motion to Amend Answer [DE 151]. The Court **ORDERS** the Defendant to **FILE** its Second Amended Answer to Plaintiff's Complaint and Counterclaim, currently docketed as an exhibit to the instant Motion, by **February 1, 2010**.

If Defendant requests that any portion of the Second Amended Answer to Plaintiff's Complaint and Counterclaim be sealed, Defendant shall **FILE** a motion designating what portions should be sealed and why.

The parties may file a motion to reopen discovery, if necessary, for a limited period of time, within ten days of this Opinion and Order. If either party decides to do so, it must designate the period of time requested and why it is needed.

SO ORDERED this 27th day of January, 2010.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record.