**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| THE BRAUN CORPORATION,<br>Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:06-CV-50-JVB-PRC |
| VANTAGE MOBILITY INTERNATIONAL, LLC,<br>Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Exclude Untimely Expert's Reports [DE 175], filed by Defendant on April 9, 2010. Plaintiff filed a response brief in opposition on April 26, 2010, to which Defendant filed its reply brief on May 6, 2010.

## PROCEDURAL AND FACTUAL BACKGROUND

On February 10, 2006, and June 15, 2006, Plaintiff filed its Complaint for Patent Infringement and Amended Complaint for Patent Infringement, alleging that Defendant[1] infringed its U.S. Patent No. 6,825,628 ("the '628 patent"), entitled "Electronic Controller for Vehicular Wheelchair Access," by selling and/or offering for sale an electronic control system for controlling vehicular wheelchair access ("the VMI System"), which Plaintiff alleges is covered by at least one claim of the '628 patent. The '628 patent was issued to Braun as assignee of the patent on November 30, 2004.

[1] American Honda Motor Co., Inc., was also named as a Defendant in the Amended Complaint but has since been dismissed.

On May 7, 2009, the Court issued an Order amending the Pre-Trial Scheduling Order in this matter. The Court set the expert discovery deadline for January 29, 2010, and ordered expert reports to be served by October 30, 2009, with rebuttal expert reports being due by December 18, 2009. Per the parties' agreement, the expert report deadline was extended through November 6, 2009, and the rebuttal expert report deadline was extended through December 29, 2009.

On November 6, 2009, Plaintiff's expert, Robert R. McSorley, submitted his report ("the original report"). In his original report, Mr. McSorley opined that the amount of Plaintiff's lost profits was $1,907,643.00 based on Plaintiff's lost sales of Chrysler minivan conversions resulting from Defendant's sale of alleged infringing Chrysler minivan conversions sold to dealers that are common to Plaintiff and Defendant.

Defendant's expert, Bryce Cook, submitted his rebuttal report on December 29, 2009. However, Defendant did not initially produce to Plaintiff Mr. Cook's notes of interviews with Defendant's employees and third parties, upon which he relied in his rebuttal report. On January 14, 2010, Defendant produced Mr. Cook's work papers, including the interview notes that contained information provided by Tim Barone, Defendant's Chief Financial Officer. In the interview notes, Mr. Barone provided that if Defendant could not sell its side-entry ramp conversions, he believed that sales would occur according to conversion company market shares, with Braun receiving 55%, VMI receiving 25%, and five or six other companies representing 20% of the market who also sell Chryslers. Pl.'s Resp. Br., Ex. 26. Further, Mr. Barone provided that there are "[t]wo groups of buyers – domestic and import", but noted that it is difficult to turn a Chrysler buyer into a Toyota or Honda buyer. *Id.*

Based on the information provided by Mr. Barone in Mr. Cook's notes, Mr. McSorley prepared a January 20, 2010, Revised Expert Report and Disclosure ("the first revised report") that included a revised lost profits calculation. In particular, Mr. McSorley asserted lost profit damages of $12,279,083.00 based on Plaintiff's lost sales of Chrysler minivan conversions resulting from Defendant's sale of alleged infringing Chrysler minivan conversions and Honda minivan conversions. In particular, Mr. McSorley interpreted Mr. Barone's statements as providing that Plaintiff would have realized 55% of Defendant's alleged Honda conversion sales but for Defendant's infringement. Pl.'s Resp. Br., Ex. 23 at 19.

On January 21, 2010, the parties adjourned the deposition of Mr. McSorley as Defendant was not prepared to proceed with the deposition in relation to the first revised report. The parties conducted the deposition of Mr. Cook on January 26, 2010. During his deposition, Mr. Cook provided that he thought that Mr. McSorley's first revised report was hastily done and contained many inconsistencies. *See* Pl.'s Resp. Br., Ex. 27 at 102:5-6. In addressing the inconsistencies in the first revised report, in part, Mr. Cook testified that

> the market share that [Mr. McSorley]'s applying to VMI's Honda sales is also incorrect because that uses Braun's Toyota market share. And in his new report, it appears that he's saying that the lost sales were lost Chrysler sales because he's using Chrysler pricing and Chrysler profit margins, *but he hasn't produced any information on Braun's Toyota selling price or profit margins or saying that they lost Toyota sales.* So far, he's only said they are Chrysler sales. So using a market share that includes Toyota in the mix is also inappropriate and inconsistent.

Def.'s Resp. Br., Ex. 27 at 104:23-105:8 (emphasis added).

On January 27, 2010, the Court issued an Order granting Defendant leave to amend its Answer to include the affirmative defense of inequitable conduct. On February 9, 2010, the Court issued an Order [DE 172] reopening discovery for the limited purpose of conducting discovery on

Defendant's affirmative defense of inequitable conduct and set the discovery deadline for April 12, 2010. The Court noted, however, that it would view with disfavor further requests for extensions of the discovery deadlines in this matter.

On March 19, 2010, Plaintiff submitted to Defendant a Second Revised Expert Report and Disclosure ("the second revised report"). In particular, Mr. McSorley asserted lost profit damages of $13,151,307.00 based on Plaintiff's lost sales of Chrysler minivan conversions resulting from Defendant's sale of alleged infringing Chrysler minivan conversions and lost sales of Toyota converted minivans resulting from Defendant's sale of alleged infringing Honda conversions. In particular, Mr. McSorley's inclusion of lost profits from lost Toyota conversions was based on Mr. Cook's notes of conversations with Mr. Barone indicating that there were two groups of buyers–domestic and import. Pl.'s Resp. Br., Ex. 34 at 20. Further, Mr. McSorley provided that based on discussions with Tom Eastman–Plaintiff's Chief Financial Officer–he understood that "consumers who purchase Honda conversions prefer foreign manufacturers, and would have probably purchased converted Toyota conversions but for VMI's sales of Honda conversions." *Id.* Mr. McSorley also represented that he reviewed and considered additional information contained in records produced since his previous two expert reports, including Mr. Cook's rebuttal report, notes, and the January 26, 2010 deposition, all of which Mr. McSorley purported to confirm the accuracy, validity and reasonableness of the sales, customer, and market share data that he analyzed and evaluated in the second revised report.

Defendant filed the instant Motion to Exclude on April 9, 2010. Plaintiff filed its response brief in opposition on April 26, 2010, to which Defendant filed a reply brief in support on May 6, 2010.

## ANALYSIS

Defendant argues that the first and second revised reports should be excluded pursuant to Federal Rule of Civil Procedure 37 because they are untimely modifications and are prejudicial to the Defendant. Plaintiff contends that the changes in lost profit calculations reflected in the first and second revised reports are timely supplements under Federal Rule of Civil Procedure 26 and Defendant cannot demonstrate prejudice in allowing the reports.

Rule 26(a)(2)(C) provides that a party must disclose expert witness reports within the time period that is established by the court. Rule 26(a)(2)(B)(i) requires that an expert report include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26(e) imposes a duty on all parties to supplement their expert reports in a timely manner when the party learns that in some material respect the disclosure or response is "incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); (2).

Here, Defendant argues that the changes to the lost profit calculations in the first and second revisions are based on information that Mr. McSorley had at the time of his original report, Mr. McSorley did not indicate that the information in the original report was incomplete or incorrect, and the changes constitute new opinions that are untimely disclosed. Plaintiff argues that the first and second revisions are supplemental disclosures that are based on new information that Mr. McSorley did not have when he prepared his original report, making his original report incomplete and incorrect.

The Federal Rules of Civil Procedure do not define what constitutes a supplemental expert report. "However, by its nature, a supplemental expert report necessarily contains information that was not expressed in the original report, or there would be no need to supplement." *Gilbane Bldg. Co. v. Downers Grove Community High School Dist. No. 99*, No. 02 C 2260, 2005 WL 838679, at *8 (N.D. Ill. April 5, 2005). "A revised expert report that is consistent with the core opinions expressed in the original expert report is likely to qualify as a supplemental report." *Id.* "Depending on the facts of the case, a revised expert report that utilizes an additional method of analysis and offers additional conclusions that were not part of the original report may also constitute a supplemental report." *Id.* However, the line between supplemental opinions and new opinions is not always clear and the determination of how to distinguish between the two likely depends on the facts of the case.

Here, after reviewing the first revised report, the Court concludes that it is a proper supplement under Rule 26. Mr. McSorley based his lost profits calculation in his original report on Plaintiff's lost sales of Chrysler minivan conversions resulting from Defendant's sale of alleged infringing Chrysler minivan conversions sold to dealers that are common to Plaintiff and Defendant. Afterward, on January 14, 2010, Defendant produced to Plaintiff the work papers and notes that Mr. Cook relied on in preparing his rebuttal report. The notes contained information from Mr. Barone indicating that if Defendant could not sell its side-entry ramp conversions, he believed that sales would occur according to conversion company market shares, with Braun receiving 55% and that there are "[t]wo groups of buyers – domestic and import", but noted that it is difficult to turn a Chrysler buyer into a Toyota or Honda buyer. Pl.'s Resp. Br., Ex. 26. Based on this information, Mr. McSorley's initial lost profit calculation appears to be incomplete, thus requiring him to

supplement his original report. Accordingly, the second revised report takes into account Mr. Barone's comments when addressing lost profits resulting from alleged Honda conversions and was completed within one week following disclosure of Mr. Cook's notes and work papers.

Defendant argues that Mr. McSorley does not rely on new information obtained after his original report. In particular, Defendant argues that Mr. McSorley relies on market share information that was disclosed prior to November 6, 2009. *See* Pl.'s Resp. Br., Ex. 19. However, even to the extent that such information was disclosed prior to the original report, it does not include the information that Mr. McSorley relied on, contained in Mr. Cook's notes, in supplementing his lost profit calculation through the first revised report. Defendant also challenges Mr. McSorley's reliance on Mr. Barone's comments as being factually inaccurate. However, the Court finds that this argument challenges the sufficiency of Mr. McSorley's opinion and is more appropriately addressed through a *Daubert* challenge rather than in the instant Motion.[2] Therefore, the Court finds that the first revised report is a valid supplement under Rule 26.[3]

Nonetheless, after reviewing the second revised report, the Court finds that those revisions to the lost profits analysis and calculation are not supplemental. In the second revised report, Mr. McSorley's lost profits calculation included Plaintiff's lost sales of Chrysler minivan conversions resulting from Defendant's sale of alleged infringing Chrysler minivan conversions and lost sales of Toyota converted minivans resulting from Defendant's sale of alleged infringing Honda conversions. The inclusion of lost sales of *Toyota* converted minivans resulting from Defendant's

---

[2] Further, Defendant's arguments that Mr. McSorley failed to seek competitive market information from Braun and failed to conduct a market survey are also matters best addressed in a *Daubert* motion.

[3] Defendant objects to the revised reports as being filed without leave of Court. In regard to the first revised report, Plaintiff was not required to seek leave of Court to supplement its expert report as it had a duty to do so under Rule 26. *Wilson v. Sundstrand Corp.*, Nos. 99 C 6944, 99 C 6946, 2003 WL 22012673, at *7 (N.D. Ill. Aug. 25, 2003).

sale of alleged infringing Honda conversions substituted the previous opinion regarding lost sales of *Chrysler* converted minivans resulting from Defendant's sale of the Honda conversions. Mr. McSorley's inclusion of lost profits from lost Toyota conversions was based on Mr. Cook's notes of conversations with Mr. Barone indicating that there were two groups of buyers–domestic and import. However, this information was available prior to the first revised report and was not new information obtained in the time period between the two revised reports. Plaintiff represents that Mr. McSorley mistakenly failed to rely on this information and take into account lost sales of Toyota conversions because he did not realize the significance of this information until after Mr. Cook's deposition and further review of the available information in light of Mr. Barone's comments contained in Mr. Cook's notes. Although not addressed by the Defendant, at Mr. Cook's January 26, 2010 deposition, he addressed inconsistencies in the first revised report, specifically providing that

> the market share that [Mr. McSorley]'s applying to VMI's Honda sales is also incorrect because that uses Braun's Toyota market share. And in his new report, it appears that he's saying that the lost sales were lost Chrysler sales because he's using Chrysler pricing and Chrysler profit margins, *but he hasn't produced any information on Braun's Toyota selling price or profit margins or saying that they lost Toyota sales.* So far, he's only said they are Chrysler sales. So using a market share that includes Toyota in the mix is also inappropriate and inconsistent.

Def.'s Resp. Br., Ex. 27 at 104:23-105:8 (emphasis added). In the second revised report, Mr. McSorley changed his lost profit opinion to include lost sales for Plaintiff's Toyota conversions, taking into account the information that Mr. Cook testified as missing from the first revised report. While Plaintiff argues that the lost profit calculation in the second revised report supplements the information in the previous reports, it appears that the inclusion of lost Toyota conversion sales is a rebuttal of Mr. Cook's deposition testimony, rather than a supplement based on new information

discovered after the first revised report.[4] *See Sancom, Inc. v. Qwest Communications Corp.*, 683 F. Supp. 2d 1043, 1062-63 (D.S.D. 2010) (finding that a surrebuttal and second supplemental report that responded to arguments raised by the rebuttal expert in a deposition was a rebuttal report rather than a supplemental report where the expert did not indicate that his initial report contained inaccuracies or that he had discovered new information rendering his initial report incomplete or incorrect). Further, even if the second revised report is not a rebuttal report to Mr. Cook's deposition testimony, the lost profit analysis involving lost sales of Toyota conversions constitutes a new opinion. Aside from changing the lost profits analysis in the second revised report, Mr. McSorley not only substituted the lost profits from the Chrysler conversions section of the first revised report with the lost profits from Toyota conversions, but also expanded the analysis and used different figures than those that he relied upon in calculating the lost profits from Chrysler conversions, resulting in a new estimated total lost profits damages figure. *See* Pl.'s Resp. Br., Ex. 34 at 20-22. Accordingly, because it does not qualify as a supplemental report under Rule 26(e), the second revised report is untimely.

If a party fails to disclose information required by Rule 26(a) or 26(e), the party may be barred under Rule 37(c) from using the information that was not disclosed, unless the failure is substantially justified or harmless. In reviewing whether a plaintiff's failure to timely disclose is substantially justified or harmless, the Court should consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the

---

[4] To the extent that Plaintiff argues that Mr. McSorley was entitled to consider customer preference data and surveys that Defendant has failed to produce, the Court finds that this would not provide a basis for filing the second revised report given that the documents were not produced and, thus, could not be relied on.

Further, to the extent that Plaintiff alleges that it requested the surveys and customer data, but that Defendant did not disclose that information, Plaintiff did not file a motion to compel and failed to alert the Court of this discovery dispute.

likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). Here, Defendant argues that it has been prejudiced by the untimely disclosure of the second revised report because the expert discovery deadline has expired and it will incur further expense by requiring additional rebuttal reports and attempting to extend the discovery deadline. While the expert discovery deadline expired on January 29, 2010, no trial date has yet been set in this case. Given that the Court has found that Plaintiff's first revised report is a proper supplement under Rule 26, Defendant would need to prepare a rebuttal report and possibly depose Mr. McSorley. To the extent that Defendant argues that it will be prejudiced because of additional expenses imposed by further discovery, Defendant did not disclose Mr. Cook's notes until after Mr. McSorley prepared his original report, thereby necessitating the first revised report, and any delay or expense occasioned by additional expert discovery on the first revised report was of Defendant's own doing. Because no trial date has been set and additional expert discovery is likely required as a result of the first revised report, the Court finds that any prejudice resulting from the untimely second revised report can be cured by permitting Defendant to depose Mr. McSorley on the matters raised therein.[5] *See McCloud ex rel. Hall v. Goodyear Dunlop Tires North America, Ltd.*, No. 04-1118, 2006 WL 5230020, at *2 (C.D. Ill. Aug. 11, 2006) (finding that where defendants were prejudiced by plaintiff's untimely disclosure of a second expert report, any prejudice that defendants may suffer from the report's untimeliness could be remedied by allowing them another opportunity to depose the expert, especially given that the trial date had not been set). To the extent that Defendant may incur additional expense in conducting further expert discovery on the second revised report, the

[5] Further, Plaintiff provides in its response brief that it will cooperate with Defendant to complete any additional depositions that are necessary.

Court notes that it previously granted Defendant's request, over Plaintiff's objection, to amend its answer to assert the affirmative defense of inequitable conduct. In granting Defendant leave to amend its answer, the Court noted that any prejudice to Plaintiff could be cured by reopening discovery for a limited period of time, which the Court did on February 9, 2010; thus resulting in Plaintiff incurring additional discovery expenses. Accordingly, the Court will reopen expert discovery for a limited period of time in this matter.

Further, although Plaintiff did not indicate that Mr. McSorley would provide a second revised report, at the end of the original and first revised reports, Mr. McSorley provided that he "reserve[d] the right to update this analysis based on new information that becomes available." Pl.'s Resp. Br., Ex. 22 at 28; Ex. 23 at 30. No disruption to the trial will occur as there is no trial date. Defendant has also failed to show any bad faith or willfulness by Plaintiff in not disclosing the revised reports at an earlier date. Rather, Plaintiff disclosed the first revised report within one week of receiving Mr. Cook's notes and work papers and disclosed the second revised report within two months of Mr. Cook's deposition.

Therefore, the Court finds that Plaintiff's untimely disclosure of the second revised report is harmless under Rule 37(c).

In its February 9, 2010 Order, the Court noted that it would view further requests to extend the discovery deadline with disfavor. This case was filed on February 10, 2006, and has been pending for four years. "Patent litigation is typically complex and correspondingly expensive for the litigants, and this case is no exception." *Rowe Intern. Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 935 (N.D. Ill. 2008). However, the first and second revised reports were prompted by information disclosed late in the expert discovery period. After the Court issued its claims construction Opinion

and Order [DE 122] on March 26, 2009, discovery in this matter was reopened and on May 7, 2009, the Court set the expert discovery deadline for January 29, 2010. The parties have not sought to extend the expert discovery deadline since that date.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** the Motion to Exclude Untimely Expert's Reports [DE 175].

Given that Defendant filed a Motion to Exclude Expert Testimony [DE 182] on April 30, 2010, challenging Mr. McSorley's damages calculation opinion on *Daubert* grounds, the Court's ruling on that motion may moot any need for additional expert discovery. Accordingly, the Court will reopen and set the expert discovery deadline, if necessary, at that time.

SO ORDERED this 20th day of May, 2010.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record.