UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THE BRAUN CORPORATION, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:06-CV-50-JVB-PRC |
| ) | |
| VANTAGE MOBILITY ) | |
| INTERNATIONAL, LLC, ) | |
| Defendant. ) | |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Braun's Motion to Strike Portions of the Report of Bryce R. Cook [DE 186], filed by Plaintiff on April 30, 2010.

On May 18, 2010, District Court Judge Joseph Van Bokkelen entered an Order [DE 208] referring this case to the undersigned Magistrate Judge for a Report and Recommendation on the instant Motion. This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court grant in part and deny in part the Motion.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 10, 2006, and June 15, 2006, Plaintiff filed its Complaint for Patent Infringement and Amended Complaint for Patent Infringement, alleging that Defendant[1] infringed its U.S. Patent No. 6,825,628 ("the '628 patent"), entitled "Electronic Controller for Vehicular

---

[1] American Honda Motor Co., Inc., was also named as a Defendant in the Amended Complaint but has since been dismissed.

Wheelchair Access," by selling and/or offering for sale an electronic control system for controlling vehicular wheelchair access ("the VMI System"), which Plaintiff alleges is covered by at least one claim of the '628 patent. The '628 patent was issued to Braun as assignee of the patent on November 30, 2004.

On December 29, 2009, Defendant submitted the Expert Report of Bryce R. Cook, in rebuttal to the Plaintiff's expert report. In this report, Mr. Cook opines that, based on his discussions with mobility equipment dealers, the most important criterion for customers in choosing a conversion van is the disabled consumer's height in a wheelchair. Mr. Cook concluded that it is highly unlikely that consumers who bought Defendant VMI's RT conversions would have bought Plaintiff's conversion van had VMI's RT conversion not been available, as Plaintiff's conversion vans have less headroom than those sold by VMI.

Mr. Cook based his opinion on articles from Plaintiff's website discussing Plaintiff's Entervan XT, a response by one of Plaintiff's employees to a question that Mr. Cook posted on Plaintiff's website[2], and survey height data compiled by Defendant and presented to Mr. Cook in a histogram of customer heights.

Regarding the response that Mr. Cook received from one of Plaintiff's employees, Mr. Cook made the inquiry after he was engaged as an expert by Defendant. According to his January 26, 2010 deposition testimony, in making the inquiry, Mr. Cook did not disclose that he was hired as

---

[2] In particular, the response provided that:
> If it is difficult or impossible to duck down as you go through the door, I think I would go with the XT if I was over about 50 or 51". That should give you a little extra room if you sometimes wear a cap or hat. Additionally, you can never tell when you might need to change cushion or wheelchair and end up too high.

Pl.'s Br. in Support, Ex. 1 at 7. Mr. Cook used this response in conjunction with the data in the histogram to arrive at his conclusion.

an expert for Defendant in this case because he did not want the person to know that he was working for Defendant and did not want the answer to be prejudiced.

Regarding the data contained in the histogram, Mr. Cook testified at his deposition that he did not review the underlying surveys, as Defendant did not provide this material to him.

Plaintiff filed the instant Motion on April 30, 2010. Defendant filed a response brief in opposition on May 17, 2010, to which Plaintiff filed a reply brief on May 27, 2010. On May 18, 2010, the District Court referred this case to the undersigned Magistrate Judge for a Report and Recommendation on the instant Motion.

**STANDARD**

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, *and* (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702 (emphasis added).

The admissibility of expert testimony–whether based on "scientific," "technical," or "other specialized" knowledge–is governed by the Supreme Court's general holding in *Daubert*, which requires the district court to exercise a "gatekeeping" function to ensure that such testimony is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141

(1999); *see generally Daubert*, 509 U.S. at 589-92; *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006). The fundamental purpose of this gate-keeping requirement "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. In considering *Daubert* and *Kumho Tire*, the Seventh Circuit Court of Appeals has endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable," and second, the court must determine whether the

expert's testimony is "relevant." *See, e.g., United States v. Hall*, 165 F.3d 1095, 1101-02 (7th Cir.1999); *Cummins v. Lyle Industries*, 93 F.3d 362, 367 (7th Cir.1996); *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614-16 (7th Cir.1993); *accord Kumho Tire*, 526 U.S. at 141.

For an expert opinion to satisfy the reliability requirement, the expert must be qualified in the relevant field and the expert's opinion must be based on sound scientific or other relevant methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Here, Mr. Cook's qualifications are not at issue. Generally, the expert witness must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the witness's field. *Kumho*, 526 U.S. at 152. Specifically, a court may, but is not required to, consider a nonexclusive list of four factors in assessing reliability: (1) whether the expert's theories and techniques can be verified by the scientific method through testing; (2) whether the theories and techniques have been subjected to peer review and publication; (3) whether the theories and techniques have been evaluated for their potential rate of error; and (4) whether the theories and techniques have been generally accepted by

the relevant scientific community. *Daubert*, 509 U.S. at 593-94. The advisory committee notes to Rule 702 provide additional factors, along with the *Daubert* list, for a court to consider, including, but not limited to, "[w]hether the expert has adequately accounted for obvious alternative explanations." Fed.R.Evid. 702 advisory committee notes (2000 Amendments) (citations omitted). In *Kumho Tire*, the Court articulated that strict adherence to the factors was not necessary; rather, the factors are examples of criteria that a trial court may use to determine whether the expert, in offering the opinion, acted as would an expert in the field. *Kumho Tire*, 526 U.S. at 151-52. As a result, "the *Daubert* framework is a flexible one that must be adapted to the particular circumstances of the case and the type of testimony being proffered." *Mihailovich v. Laatsch*, 359 F.3d 892, 919 (7th Cir. 2004). Ultimately, the object of the court's Rule 702 reliability inquiry is to ensure that the opinions expressed by testifying experts "adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

Finally, the Court notes that "[a] review of caselaw [sic] after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702 advisory committee notes (2000 Amendments). Further, the District Court possesses "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. Further, "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Comer v. American Elec. Power*, 63 F. Supp. 2d 927, 933 (N.D. Ind. 1999) (quoting *Kumho Tire*, 526 U.S. at 142 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997))).

**ANALYSIS**

In the instant Motion, Plaintiff requests that the Court strike portions of Mr. Cook's expert report that refer to, or rely upon, Mr. Cook's *ex parte* communication with Plaintiff's employee or the histogram provided by Defendant and preclude him from offering any opinion testimony regarding those portions of his expert report. The Court evaluates each in turn.

**A. Mr. Cook's *Ex Parte* Communication with Plaintiff's Employee**

Plaintiff argues that any references to information obtained from Mr. Cook's *ex parte* communication with one of Plaintiff's employees, through his inquiry on Plaintiff's website, contained in his expert report should be stricken and he should be prohibited from offering testimony based on that information because his conduct violates the Indiana Rules of Professional Conduct in that he cannot do what Defendant's counsel would have been prohibited from doing under the Rules.

Northern District of Indiana Local Rule 83.5(f) provides that "[t]he Rules of Professional Conduct, as adopted by the Indiana Supreme Court . . . shall provide the standards of conduct for those participating in this court." N.D. Ind. L.R. 83.5(f). In particular, Plaintiff invokes Indiana Rules of Professional Conduct 4.2 and 5.3.

The Supreme Court of Indiana has adopted the American Bar Association Model Rules of Professional Conduct. *See Brown v. St. Joseph County*, 148 F.R.D. 246, 249 n. 1 (N.D. Ind. 1993). Rule 4.2, entitled "Communication with Person Represented by Counsel", provides that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyers or is authorized by law or a court order.

Ind. Rule of Prof. Conduct 4.2. One of the purposes of Rule 4.2 is to prevent lawyers from

taking advantage of unrepresented laypersons. *In re Uttermohlen*, 768 N.E.2d 449, 451 (Ind. 2002). Comment 7 to Rule 4.2 provides that "[i]n the case of a represented organization, this Rule prohibits communications with a constituent of the organization who . . . directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil . . . liability." Ind. Rule of Prof. Conduct 4.2, Comment 7.

Rule 5.3 provides that "[w]ith respect to a nonlawyer employed or retained by or associated with a lawyer . . . a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer". Ind. Rule of Prof. Conduct 5.3(b). Comment 1 to Rule 5.3 provides that "[l]awyers generally employ assistants in their practice, including . . . investigators" and "[s]uch assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services" and "[a] lawyer must give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment . . . ." Ind. Rule of Prof. Conduct 5.3, Comment 1.

Here, at the time he made the inquiry, Mr. Cook was engaged as an expert by Defendant. Plaintiff argues that at the time he made the inquiry on Plaintiff's website, Mr. Cook was acting as an investigator of Defendant. As such, he was an agent for Defendant's counsel and was prohibited from doing anything that Defendant's counsel could not do under the Rules of Professional Conduct. Accordingly, since Defendant's counsel could not engage in *ex parte* communication with Plaintiff's employee, neither could Mr. Cook.

7

In its response brief, Defendant argues that Mr. Cook obtained public information that was available on Plaintiff's website. However, Defendant ignores the fact that the response from Plaintiff's employee would not have been made but for Mr. Cook's inquiry (i.e., *ex parte* communication).

Further, Defendant argues that Rule 4.2 "does not address communication with experts."[3] Def.'s Resp. Br. at 3. However, Plaintiff argues that Mr. Cook was acting as an investigator.

Mr. Cook testified at his January 26, 2010 deposition that at the time he made the inquiry he was aware that the parties were involved in litigation and that Plaintiff was represented by counsel. Mr. Cook testified that he did not disclose his identity as an expert in this case because he did not want the responder to know his identity and prejudice the response. However, Mr. Cook also testified that no one at VMI told him that he was not to communicate with anyone from Braun or discussed with him that a lawyer or his agent has a responsibility not to communicate with represented parties. Mr. Cook testified that he was unaware that the obligation for lawyers not to communicate with represented parties extended to agents of the lawyer. Mr. Cook also testified that it did not occur to him at the time that the question should instead have been posed through the lawyers nor to ask a lawyer whether he should make the inquiry prior to doing so.

Further, Mr. Cook testified that, after submitting his report, counsel for Defendant asked him about how he obtained the information in his report and Mr. Cook told him that "it was

---

[3] In particular, Defendant relies on *Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727, 730 (S.D. Tex. 2001), in support of this argument. However, *Cramer* involves a situation where an *attorney* engaged in *ex parte* contacts with the other party's expert, not where an *expert* engaged in *ex parte* contacts with a party. *See Cramer*, 141 F. Supp. 2d at 730-31. Accordingly, Defendant's reliance on *Cramer* is misplaced.

directly on the Web site, publicly available for anyone to see". Pl.'s Br. in Support, Ex. 2 at 203:10-11.

Based on Mr. Cook's testimony, there is no indication that Mr. Cook discussed posting the inquiry with Defendant's counsel prior to doing so, did so at Defendant's counsel's direction, or disclosed to Defendant's counsel how he obtained the information from Plaintiff's employee. Accordingly, Plaintiff has failed to show that Defendant's counsel caused Mr. Cook to communicate with Plaintiff's employee, so as to warrant excluding his opinion and testimony on this ground. *See Jones v. Scientific Colors, Inc.*, 201 F. Supp. 2d 820, 834 (N.D. Ill. 2001) (refusing to sanction a party where there was inadequate evidence in the record to establish that counsel caused investigators to communicate with represented parties). "At most, [Defendant's counsel] may be faulted for failing to anticipate that events would occur that would require them to instruct [Mr. Cook] regarding [his] ethical obligations. Arguably, these events were not reasonably foreseeable in the circumstances." *U.S. v. Smallwood*, 365 F. Supp. 2d 689, 699 (E.D. Va. 2005). "Nonetheless, the facts of this case are a useful reminder that lawyers are obligated to take affirmative steps to instruct and supervise their investigators . . . to ensure that they are aware of, and ultimately comply with, the lawyers' ethical obligations." *Id.* (citing Rule 5.3(b) of the Virginia Rules of Professional Conduct, which is identical to the Indiana Rule).

Nonetheless, Plaintiff argues that the opinion and testimony may also be excluded as irrelevant. In its response brief, Defendant implies that Mr. Cook obtained information from Plaintiff's employee who is not a person involved in this litigation and does not regularly consult with Plaintiff's counsel concerning this matter and does not have authority to obligate Plaintiff with respect to this matter. *See* Def.'s Resp. Br., 3. Thus, pursuant to Comment 7 of Rule 4.2,

9

the communication here is not covered by Rule 4.2.  Plaintiff argues in its reply brief that if Mr. Cook contacted a person who did not have authority to speak or act for Plaintiff on the subject of the communication, then his statement is irrelevant because it cannot be imputed to Plaintiff. However, neither party has provided evidence indicating the employee's position or his authority to bind Plaintiff.  Because of the lack of evidence and briefing on this issue, the Court cannot adequately address the issue at this time.  Therefore, Plaintiff has failed to show that Mr. Cook's opinion and testimony regarding the communication with Plaintiff's employee should be excluded. The Court recommends that the District Court deny the instant Motion as to information obtained from Mr. Cook's direct communication with one of Plaintiff's employees.

### B. Reliability of Mr. Cook's Opinion Based on the Histogram

Next, Plaintiff seeks to exclude portions of Mr. Cook's expert report that rely on the VMI histogram and preclude him from testifying about any opinions based on the histogram because it is unreliable.

In his opinion, Mr. Cook finds that it is not highly likely that all consumers who bought VMI's RT conversions would have bought Plaintiff's Entervan if the VMI RT conversion was not available.  Mr. Cook bases this opinion, in part, on data he received from Defendant regarding customer height that was summarized in a histogram, compiled from surveys conducted by Defendant.

Plaintiff argues that Mr. Cook's opinion is unreliable as he never saw the underlying surveys upon which the data is based, is unfamiliar with the questions in the surveys, and is unfamiliar with how the data was collected.  In particular, Plaintiff argues that the histogram is unreliable as it does not indicate the number of survey responses associated with each reported

height or the total number of survey responses used to create the graph. Accordingly, because the histogram is unreliable, Mr. Cook's opinion relying on the histogram is also unreliable.

Defendant argues that Mr. Cook did not rely on the underlying customer surveys and Plaintiff failed to request these surveys during discovery. Further, Mr. Cook's opinion was reliable as he interviewed distributors and relied on Plaintiff's publicly available information to corroborate his opinions regarding height-based preferences and their effect on damage calculations.[4] Plaintiff indicates that the surveys were not produced and it cannot test the histogram's reliability without evaluating the underlying surveys.

An expert's opinion should not be rejected as unreliable simply because the expert relied on the reports of others. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000). Rather, experts may rely on data and other information that is supplied by third parties. *Nutrasweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 789-90 (7th Cir. 2000). "Analyzing data assembled by others is neither illicit nor unusual, even if the data were prepared for litigation by an interested party." *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F. Supp. 2d 908, 934 (W.D. Wis. 2007). "Either 'hands-on testing' or 'review of experimental, statistical, or other scientific data generated by others in the field' may suffice as a reasonable methodology upon which to base an opinion." *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999). "Unless the expert's opinion is too speculative, it should not be rejected as unreliable merely because the expert relied on the reports of others." *Southwire Co.*, 528 F. Supp. 2d at 934.

"Under Rule 703, the data used by an expert to form his opinion need not be admissible under the rules of evidence." *Lyman v. St. Jude Medical, S.C., Inc.*, 580 F. Supp. 2d 719, 726

---

[4] Plaintiff acknowledges in its reply brief that it is not challenging, in this Motion, Mr. Cook's interviews or reliance on information that was publicly available on its website.

(E.D. Wis. 2008). However, if the data underlying the expert's opinion is "so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded." *Id.* "[W]hen an expert relies upon information given to him by a party or counsel, he must independently verify that information before utilizing it in his calculations." *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-cv-00341-SEB-DML, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) (Slip Copy).

Here, Mr. Cook relied on the histogram prepared by Defendant in determining that it is unlikely that the consumers who bought Defendant's RT conversions would have bought Plaintiff's conversion van if Defendant's was unavailable. While Defendant is correct that Mr. Cook did not, directly, rely on the customer surveys, the histogram–which he does rely on–is based on information contained in the customer surveys. Therefore, he relied on the data that is contained in the customer surveys.

At his January 26, 2010 deposition, Mr. Cook testified that he did not review any of the underlying information, or surveys, to the histogram as Defendant only provided him with the data contained in the histogram, but not the underlying documents on which it is based. Mr. Cook should have independently verified the reliability of the underlying surveys prior to using the supplied data to determine that 80.6% of Defendant's customers have a height exceeding Plaintiff's height criteria for its Entervan product, making it highly unlikely that all customers who bought Defendant's RT conversions would have bought Plaintiff's product if Defendant's RT conversion was not available. *See Lyman*, 580 F. Supp. 2d at 726 (providing that an expert should have verified the data underlying the summary of sales data, provided by defendant's counsel, that he relied on in forming his opinion). There is no indication in the record that Mr.

Cook was involved in, or aware of, the collection of the survey responses. *See Southwire*, 528 F. Supp. 2d at 934 (finding that an expert's opinion based on data collected by others was reliable, in part, where he personally coordinated collection of the underlying data). Therefore, the Court finds that the histogram is not reliable and the portion of Mr. Cook's opinion relying on this information must be struck and his testimony excluded.[5] *See Lyman*, 580 F. Supp. 2d at 726; *Crowley v. Chait*, 322 F. Supp. 2d 530, 546-47 (D.N.J. 2004) (excluding expert testimony where the expert relied on a summary of information prepared by counsel but failed to review the underlying information); *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) (affirming exclusion of expert testimony, on grounds that the data underlying his opinion was so unreliable that no reasonable expert could base an opinion on it, where the expert relied on a document but did not know the source or basis of the document); *In re TMI Litigation*, 193 F.3d 613, 697-98 (3d Cir. 1999) (affirming exclusion of testimony where expert relied on summaries prepared by a party's counsel). The Court recommends that the District Court grant the instant Motion to the extent that Plaintiff requests that the portion of Mr. Cook's opinion relying on the VMI histogram be struck and Mr. Cook be precluded from testifying as to opinions based on the histogram.

## CONCLUSION

---

[5] Further, because the Defendant has failed to disclose the underlying surveys, the Court cannot determine whether they are reliable. *See In re Fedex Ground Package System, Inc., Employment Practices Litigation*, No. 3:05-MD-527 RM (MDL-1700), 2007 WL 3027405, at *4 (N.D. Ind. Oct. 15, 2007) (discussing the requirements for opinion survey evidence to be reliable); *Menasha Corp. v. News America Marketing In-Store, Inc.*, 238 F. Supp. 2d 1024, 1030 (N.D. Ill. 2003) (discussing that consumer survey evidence is admissible if a qualified expert testifies that the survey was conducted according to generally accepted principles of survey research).

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT in part and DENY in part** Braun's Motion to Strike Portions of the Report of Bryce R. Cook [DE 186].

The Court recommends that the District Court **GRANT** the instant Motion to the extent that Plaintiff requests that the portions of Mr. Cook's expert report relying on the histogram be struck and that Mr. Cook be precluded from testifying as to any opinions based on the histogram.

The Court recommends that the District Court **DENY** the instant Motion to the extent that Plaintiff requests that the portion of Mr. Cook's expert report referring to or relying on the information that Mr. Cook obtained through *ex parte* communication with one of Plaintiff's employees and that Mr. Cook be precluded from testifying about that information.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court trial Judge or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 21st day of June, 2010.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc: All counsel of record